STATE of Alaska, DIVISION OF
AGRICULTURE, Appellant,

v.

Julian & Roberta FOWLER, Appellees.

No. 4114.

Supreme Court of Alaska.

May 9, 1980.

Thomas R. Wickwire, Asst. Atty. Gen., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Charles D. Silvey, Jr., Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

This appeal of a grant of summary judgment involves conflicting security interests in farm equipment and livestock. Julian and Roberta Fowler, the appellees here, retook possession of the equipment and livestock pursuant to the terms of a conditional sales agreement with Raymond and Helen Pedrick. The Alaska Division of Agriculture claims that it is entitled to possession of these items under its perfected security agreement with the Pedricks, who have been adjudged bankrupt.

In 1975 the Fowlers wished to sell their dairy farm near Fairbanks, and the Pedricks wished to buy it. After negotiations in which a representative of the state's Agricultural Revolving Loan Fund (ARLF) took part, the Fowlers, on May 1, 1975, entered into two agreements with the Pedricks: a five-year lease agreement on the farm and a conditional sales agreement on a list of farm equipment and livestock attached to the document. The sales agreement called for sixty monthly payments, and provided that "should a delinquency of 90 days or more exist, the total amount due

becomes due immediately or the return of all items listed or their replacements." Within a week of the May 1 sale date, Julian Fowler delivered copies of the agreements to Doug Jacobson, the loan administrator for the ARLF. The Fowlers never filed a statement of their security agreement in a public recording office.[1]

On May 13, the ARLF advanced the Pedricks $20,000 for "operating funds," and the Pedricks executed a security agreement in favor of the ARLF. The list of collateral attached to this agreement was a copy of the same list that the Fowlers had used in their conditional sales agreement. On the same day, the state properly filed a financing statement signed by the Pedricks and Jacobson.

Two years later, on May 1, 1977, the Fowlers repossessed their farm because the Pedricks were "seriously in default" on their payments. At the Fowlers' request, OHM, Inc., took possession of the livestock, only some of which were capable of milk production. On August 11, 1977, the Division of Agriculture filed suit in superior court against the Pedricks, the Fowlers and OHM. The state's complaint alleged in part that the Pedricks were in default to the state in the amount of $24,334.16 plus interest; that the state had a perfected security interest in the livestock, equipment, fixtures, milk and proceeds from the sale of milk; and that the Fowlers' and OHM's possession of the collateral was in violation of the state's security interest. The state asked that judgment on the Pedricks' notes be entered against the Pedricks, and that all defendants be required to deliver to the state all collateral and proceeds thereof.

The Fowlers moved for summary judgment against the state, claiming that it was "clearly implied" that the state's security interest would be subordinate to their purchase money security interest. The state opposed the motion and argued that whether or not the state agreed to subordinate presented a disputed question of fact. The Fowlers in response agreed that there was a disputed issue on the subordination question, thus precluding summary judgment on that basis, but that there was no dispute as to the state's knowledge of the Fowlers' prior interest when the state made its loan, and that summary judgment was proper for that reason. The superior court granted summary judgment on November 7, 1977, to the Fowlers on this last theory. The state's motion to reconsider was granted, and the court reaffirmed its earlier decision. The state has appealed from this reaffirmation.

The controlling question here is whether Article 9 of the Uniform Commercial Code [2] applies to the security agreement between the state and the Pedricks. If it does apply, then the grant of summary judgment to the Fowlers was in error.[3]

---

1. Such a filing is necessary to "perfect" a creditor's security interest in collateral, subject to certain exceptions not applicable here. AS 45.-05.734 (U.C.C. § 9–302). When there are two security interests in the same collateral, the first perfected one prevails, AS 45.05.754 (U.C.C. § 9–312), again with exceptions not relevant to this case.

2. AS 45.05.690–.794.

3. Under AS 45.05.754 (U.C.C. § 9–312), a perfected security interest will prevail over a prior unperfected interest, even if the perfecting party had notice of the prior interest when he took his interest. *In re Smith*, 326 F.Supp. 1311 (D.Minn.1971), and cases cited therein at 1315; J. White and R. Summers, Uniform Commercial Code § 25–4, at 906 (1972). The Fowlers argue that the state did not act in good faith, as required by AS 45.05.020(19) (U.C.C. § 1–

201(19)), in entering into a security agreement with the Pedricks in which the Pedricks warranted that they owned the collateral clear of liens or other security interests when the state knew this was not true. We have difficulty perceiving how the Pedricks' warranty bears on the issue of the state's bad faith where, as here, the state is not relying on the warranty. Mere knowledge of a pre-existing unperfected security interest by a subsequent security interest holder can not itself be bad faith, for that would defeat the operation of the "pure race" recording system of the U.C.C. *See Bloom v. Hilty*, 427 Pa. 463, 234 A.2d 860, 864 (1967) ("commentators [have raised] the question whether the Code's general requirement of good faith (§ 1–203) cuts across the literal words of Article 9. They conclude, rightly it seems, that some leading on or other basis for estoppel would seem necessary to deprive one

Since we find that Article 9 does furnish the governing law for this case, we must reverse the trial court.

In 1968 the legislature amended AS 45.-05.696 (U.C.C. § 9–104), which lists transactions not covered by Article 9. It added AS 45.05.696(12), which provides that Article 9 does not apply "to a security interest created by or on behalf of the state." The Fowlers contend that this provision is clear and unequivocal: "by" refers to the state as a debtor, and "on behalf of" is synonymous with "in favor of" and refers to the state as a creditor. While that is a possible reading, a more natural interpretation of the phrase "on behalf of" in the context of the statute would be that it conveys the notion of an official agent acting for the state.[4] As so read the statute would not apply to the state as a creditor.

The legislative history confirms this interpretation. It consists of a letter of transmission from the governor:

The Honorable Clem Tillion
Chairman, House Rules Committee
Alaska State Legislature
Juneau, Alaska 99801
Dear Mr. Chairman:
Pursuant to State Law and the Uniform Rules of the Legislature, I am submitting a bill relating to the scope of the Uniform Commercial Code and its applicability to public securities.
It is difficult to believe that the provisions of the Uniform Commercial Code were intended to apply to the sale of public securities, yet through apparent inadvertency said transactions were omitted from the list of those transactions not governed by the Uniform Commercial Code. It is impractical to expect public entities such as the state and its subdivisions to comply with the provisions of the Uniform Commercial Code when obtaining debt financing. Therefore, this bill is designed to clarify the true intent of the Uniform Commercial Code so that its scope cannot be misinterpreted.

Sincerely yours,
/s/ Walter J. Hickel
Walter J. Hickel
Governor

This letter clearly supports a reading limiting the statute to situations in which the state is a borrower.[5] That the legislature shared the governor's intention is reflected by section 2, chapter 61, SLA 1968:

This Act [adding AS 45.05.696(12)] shall not be construed as having changed the scope of AS 45.05.690–45.05.794 since this Act merely makes explicit that which was already implied and intended before its enactment.

It may have been "already implied and intended" that Article 9 was not to apply to public securities offerings. In our opinion, the same cannot be said for the proposition that Article 9 is never applicable when the state is a party to a secured transaction, especially as Alaska is the only state with a

---

of a priority given him by statute.") *citing* 1 Coogan, Hogan, and Vagts, Secured Transactions Under the Uniform Commercial Code at 177 (1967); J. White & R. Summers, *supra* at 906. For this reason summary judgment could not properly have been predicated on the fact of the state's knowledge, taken alone. By expressing the foregoing we do not mean to preclude a trial of the factual issue of whether the state acted in bad faith based on additional facts. If, for example, the state officials owed a duty to advise the Fowlers or if they misled the Fowlers as to the priority of their security interest, bad faith may be involved which could defeat the state's claim to priority. *See generally* Summers, *General Equity Principles under § 1–103 of the Uniform Commercial Code*, 72 Northwestern L.Rev. 906 (1978).

4. *See* Oxford English Dictionary 1971. *Cf. Commissioner v. Shamberg's Estate*, 144 F.2d 998, 1006 (2d Cir. 1944), *cert. denied*, 323 U.S. 792, 65 S.Ct. 433, 89 L.Ed. 631 (1945) (bonds of New York Port Authority were issued "on behalf of" states of New York and New Jersey within the meaning of tax regulations).

5. The Fowlers suggest that such scant legislative history should be disregarded. *But see* 2A C. Sands, Sutherland Statutory Construction § 48.05, at 201 (4th ed. 1973), which states that transmission messages from the executive are often used "to ascertain the evils at which the statute was aimed."

provision of this sort.[6] Hence we construe AS 45.05.-696(12) as excluding from Article 9 only those secured transactions where the state is a debtor.[7]

The judgment of the superior court is reversed and the case remanded for further proceedings.

---

**6.** *See* Uniform Commercial Code (U.L.A.) § 9–104, (West Supp.1979) "Action in Adopting Jurisdictions." California had a very similar provision, Cal.Comm.Code § 9104(*1*), but it was repealed in 1974. *See* West's Ann.U.C.C. § 9104 (West's Supp.1979).

**7.** We also find this limited construction to be the more reasonable one. We cannot perceive of any reason the legislature would have intended article nine not to apply in situations like this one, where the state makes a secured loan to one of its citizens.