## Hamilton Bank v. Seiger

*Frederick R. Mogul,* for plaintiff.
*James A. Greene,* for defendant Seiger.
*Louis R. Rizzuto,* for defendant Bonanno.

ESHELMAN, *T.J.*, July 14, 1982—This matter is presently before the court on plaintiff's motion for a writ of seizure pursuant to Pennsylvania Rule of Civil Procedure 1075.1. Plaintiff commenced its action in replevin and assumpsit on May 24, 1982, and analysis of the complaint reveals the following allegations:

On or about December 11, 1979, Defendant Frederick A. Seiger, Jr. (hereinafter "Seiger") borrowed the sum of $6,000 from plaintiff Hamilton Bank (hereinafter Bank) in order to finance the purchase of a 1978 Jeep Wagoneer vehicle. At that time, the bank took from Seiger an installment note and security agreement in the same vehicle. By the terms of the loan, monthly payments in the sum of $205.93 were to be made from January 15, 1980 to December 15, 1982, however Seiger failed to pay the installment due on January 15, 1982 as well as any other subsequent installments. Sometime after the alleged default, Seiger contacted the Bank and informed it that he was attempting to sell the subject vehicle to defendant John A. Bonanno, t/a J.B.'s Auto Sales and Service, (hereinafter Bonanno) who was then aware of the Bank's security interest in the vehicle. Title to the vehicle was earlier assigned to Bonanno on March 13, 1981 and a certificate of title was obtained by him on March 4, 1982. No payments on the remaining balance have allegedly been made by Seiger nor have defendants allowed the bank to take possession.

At the time of the scheduled hearing on the instant motion, disclosure was made to the court that

Bonanno, at all relevant times, had knowledge of the bank's security interest in the vehicle in question.[1] Bonanno now asserts that despite his knowledge of the outstanding security interest, he nonetheless has a superior right to possession by virtue of the Bank's failure to perfect in accordance with section 1132(b) of the Vehicle Code,[2] which provides as follows:

(b) Method of perfection.—A security interest is perfected by notation thereof by the [D]epartment [of Transportation] on the certificate of title for the vehicle. In order to obtain such notation the lienholder shall deliver to the [D]epartment the existing certificate of title, if any; an application for a certificate of title upon a form prescribed by the [D]epartment containing the name and address of the lienholder; and any other information regarding the security interest as may be reasonably required and the required fee.

The bank, while admitting its failure to perfect as per the provisions of the Vehicle Code, has countered Bonanno's position, arguing that its security interest arises by way of a security agreement between itself and Seiger, such agreement being enforceable and establishing superior right to possession in itself.

We assess the merits of these arguments below.

---

1. At the time of the hearing, it was revealed that Bonanno spoke with personnel of the bank on various occasions prior to his taking title. During the course of these conversations, Bonanno was made aware of the bank's security interest. We consider this sufficient to constitute "knowledge" of the aforesaid interest. See Bloom v. Hilty, 427 Pa. 463, 234 A. 2d 860 (1967).

2. 75 Pa.C.S.A. §1132(b).

## DISCUSSION

Initially, it should be noted that "[t]he principle requirement for issuance of the writ [of seizure] and the *sole* issue at the hearing [for the writ pursuant to Pa.R.C.P. 1075.1] is whether plaintiff proves his 'probable right' to possession of the property, not the final merits of the case." 3 Goodrich-Amram 2nd, section 1075.1:1 (1976) at p. 105. (Emphasis supplied.) Also significant is section §1132(a) of the Vehicle Code,[3] which states that "[u]nless perfected as provided in this subchapter . . . a security interest in a vehicle of a type for which certificate of title is required is not valid against any person as to whose rights an unperfected security interest is subordinate under the provisions of Title 13 (relating to commercial code)."[4] In determining plaintiff's "probable right" to possession, reference is therefore made to Article 9 of the Pennsylvania Uniform Commercial Code (hereinafter "U.C.C.").

"Section [9201 of the U.C.C.[5]] states the basic right of the secured creditor vis-a-vis other competitors. The first sentence of that section reads as follows: 'Except as otherwise provided by this [title], a security agreement is effective according to its terms between the parties, *against purchasers of the collateral* and against creditors.' The sentence means what it says, and the secured creditor, even an unperfected secured creditor, has greater rights in his collateral than any other creditor unless Article Nine provides otherwise." (Emphasis

---

3. 75 Pa.C.S.A. §1132(a).

4. See 13 Pa.C.S.A. §1101 et seq.

5. 13 Pa.C.S.A. §9201.

supplied.) White & Summers, Uniform Commercial Code §25-2 at 901 (1976). Thus, any right to possession of Bonanno would exist by virtue of section 9301 of the U.C.C.[6] (relating to persons who take priority over unperfected security interests) or section 9307[7] (relating to protection of buyers of goods). The former section reads, in pertinent part, as follows:

(a) General Rule.—Except as otherwise provided in subsection (b), an unperfected security interest is subordinate to the rights of:

(3) In the case of goods, instruments, documents, and chattel paper, a person who is not a secured party and who is a transferee in bulk or other buyer not in ordinary course of business to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected, . . .

Assuming Bonanno could qualify as a "buyer not in ordinary course of business," the subsection would nevertheless fail to provide him with superior rights in the collateral inasmuch as he received delivery of the same with knowledge of the bank's security interest. We therefore turn to section 9307, which provides as follows:

(a) Buyer in ordinary course of business.—A buyer in ordinary course of business (section 1201 (relating to general definitions)) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

6. 13 Pa.C.S.A. §9301.

7. 13 Pa.C.S.A. §9307.

(b) Buyer of consumer goods and certain farm equipment.— In the case of consumer goods and in the case of farm equipment having an original purchase price not in excess of $2,500 (other than fixtures, see section 9313), a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes or his own farming operations unless prior to the purchase the secured party has filed a financing statement covering such goods.

As is apparent from a reading of the statute, subsection (a) deals with buyers in the ordinary course of business and protects such a buyer *even* if the buyer knows of the existence of an outstanding security interest in the collateral. However, to qualify as a "buyer in ordinary course of business" under section 1201 of the U.C.C.,[8] the purchase of the collateral must be "from a person in the business of selling goods of that kind." Seiger, from whom Bonanno purchased the subject vehicle, does not fall within this definition. Hence, section 9307(a) is inapplicable.

We next focus upon subsection (b), which pertains to the purchase of consumer goods in the hands of the seller. The requirements of the subsection may be subdivided:

(1) In the seller's hands the goods are either consumer goods or farm equipment having an original purchase price of $2,500 or less.

(2) The buyer must have no knowledge of the security interest.

(3) The buyer must buy for value and for his own family or household purposes or for his own farm-

---

8. 13 Pa.C.S.A. §1201.

ing operation (i.e., goods must usually be consumer goods in his hands).

(4) There is no filed financing statement covering the goods.[9]

See White & Summers, supra at 943. In the case presently before us, the second and third of the aforementioned requisites have not been met. As such, Bonanno may not claim a superior right to possession under section 9307(b). It appearing that no other provision of Article Nine accords Bonanno with greater rights in the collateral than those of the Bank, we must conclude that the aforesaid plaintiff has established its "probable right" to possession of the vehicle in question due to the existence of its security agreement with Seiger.[10]

Accordingly, we enter the following

## ORDER

And now, July 14, 1982, plaintiff having filed a bond pursuant to Pa.R.C.P. 1075.3 and said bond being approved by the prothonotary, it is hereby ordered that plaintiff's motion for the issuance of a writ of seizure be granted.

---

9. With regard to motor vehicles which are not inventory held for sale and for which a certificate of title is required, section 9302(c) of the U.C.C. states that the filing provisions of Article 9 are inapplicable if notation of such security interest can be indicated by a public official on the certificate of title.

10. Section 9203(a)(2) of the U.C.C., states inter alia, that ". . . a security interest is not enforceable against the debtor or third parties unless: . . . (2) the debtor has signed a security agreement which contains a description of the collateral. . . . " Analysis of the instant security agreement reveals that these requirements have been met.