**DEPOSIT RECOVERY CORPORATION,**
Plaintiff–Appellant,

v.

**Antonio SANTINI, and Carson Johnston
d/b/a Shady Brook Angus,
Defendants–Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Nov. 2, 1988.

Application for Permission to Appeal
Denied Jan. 23, 1989.

Ray Brock, Gary R. Patrick and Steven M. Jacoway, Chattanooga, Tom Stack, Pulaski, for plaintiff-appellant.

Paul A. Bates and Ben Boston, Lawrenceburg, for defendants-appellees.

## OPINION

TODD, Presiding Judge.

The plaintiff-counter defendant, Deposit Recovery Corporation, has appealed from an adverse judgment in its suit against the defendants-counter-plaintiffs, Antonio Santini and Carson Johnston d/b/a Shady Brook Angus.

### The Case

Deposit sued Santini and Johnston upon a note which plaintiff purchased from the Federal Deposit Insurance Corporation (F.D.I.C.). The complaint sought judgment for principal of $9,194.42, which included interest and attorney's fee as provided in the note.

Defendants Antonio Santini and Shady Brook Angus pled a release executed by the Bank of Loretto on July 31, 1985, in consideration of a payment of $12,000.00. No answer was filed on behalf of Johnston.

By counterclaim defendants Santini and Shady Brook Angus asserted that plaintiff filed this suit with full knowledge of said release, maliciously and without just cause, and demanded $500,000 compensatory and $1,000,000 punitive damages.

Plaintiff's answer to the counterclaim denied knowledge of the release and demanded "sanctions and costs" in answering and defending the counterclaim.

Plaintiff filed motions to dismiss the counterclaim, to disqualify counsel for the defendant and for the Trial Judge to recuse himself, all of which were overruled by the Trial Judge.

Plaintiff moved for summary judgment dismissing the counterclaim. No record is found of the specific disposition of this motion.

On March 15, 1988, the Trial Court entered a lengthy order in which plaintiff's suit against Antonio Santini d/b/a Shady Brook Angus was dismissed and judgment was awarded to the counter-plaintiff Santini d/b/a Shady Brook Angus and against plaintiff for $120,979.75 consisting of $40,979 compensatory and $80,000 punitive damages.

There is no record of the entry of default judgment against Carson Johnston; but, on April 4, 1988, the Trial Court entered judgment in favor of plaintiff and against the defendant Carson Johnston in the amount of $13,974 for principal, interest and attorney's fees.

Carson Johnston does not appear to be a party in this appeal, and the judgment against him does not appear to be at issue in this Court.

Plaintiff filed a notice of appeal from the March 15, 1988, judgment.

### The First Issue—Liability of the Defendants

■ The note exhibited to the complaint is captioned:

The Bank of Lawrenceburg

Branch of the Bank of Loretto

Lawrenceburg, Tennessee

and appears to be signed in script as follows:

Shady Brook Angus (Borrower)

Antonio Santini (Borrower)

Carson Johnston (Borrower)

By the terms of the note, the borrowers promise to pay to the order of "the above named lender" the sum of $9,500.00.

In the upper right hand corner of the note appears the amount of $9,500 which is stricken with a line, and below it in script appears $7,500.

The note is dated October 31, 1983, and due February 1, 1984. However, in the upper right corner of the note the latter date is stricken. Successive dates of July 2, 1984, October 16, 1984, and March 17, 1985 are also stricken, leaving unstricken the date, July 17, 1985.

The note bears on its face a script notation as follows:

Marked off 8/2/85

The note also bears a stamped notation which is only partly legible as follows:

All right, title and interest of the undersigned is hereby assigned to *Deposit Recov Corp* assignee without warranty or recourse except as provided in ... of the Sale Agreement incorporated herein by reference between FDIC and assignee dated 11–5–86.

Federal Deposit Insurance Corporation

By (Illegible)

Title (Illegible)

The only defense asserted is a document executed on July 31, 1985, entitled "Release" which reads as follows:

This Agreement made and entered into this 31st day of July, 1985, by and between Bank of Loretto, Bank of Leoma, and Bank of Lawrenceburg, Parties of the First Part, and Antonio Santini and wife, Lucille Santini, and Shady Brook Farms Parties of the Second Part.

WITNESSETH:

That WHEREAS the Parties of the First Part the holders of certain Promissory Notes the exact dates of which are evidenced in Exhibit 1 hereto which is incorporated herein and made a part hereof and acknowledged by the Party of the First Part to be the only existing Promissory Notes to which the said Party of the First Part claims the Parties of the Second Part to be liable.

And WHEREAS the Parties of the Second Part claim that they have not received the consideration or loan proceeds resulting from said Promissory Notes and had no knowledge of same.

And WHEREAS said Parties of the Second Part do not admit liability resulting from said Promissory Notes but are willing to make a certain definite payment to the Party of the First Part upon consideration that the same be accepted as a full and final settlement by the Parties of the First Part of the above referenced Promisory (sic) Notes as concerns the Party of the Second Part.

NOW, THEREFORE, in consideration of the payment to the Parties of the First Part from the Parties of the Second Part in the sum of Twelve thousand ($12,000) dollars, the receipt of which is hereby acknowledged, said Parties of the First Part, their successors and assigns, doth hereby release and forever discharge said Parties of the Second Part, Antonio Santini and wife, Lucille Santini and Shady Brook Farms, their heirs, successors and assigns, from any and all right, claim or demand of said Parties of the First Part on account of any Promissory Notes, and intent and purpose of this Release being it is a full, complete and final settlement of any and all liability the Party of the Second Part has to the Party of the First Part.

IN TESTIMONY WHEREOF, said Parties of the First Part have hereunto set their signatures the day and year first above written.

/s/ Bank of Loretto
BANK OF LORETTO
/s/ Bank of Leoma

BANK OF LEOMA
/s/ Bank of Lawrenceburg
BANK OF LAWRENCEBURG
ALL BY /s/ Kenneth Augustin
KENNETH AUGUSTIN, PRESIDENT
STATE OF TENNESSEE
COUNTY OF LAWRENCE

Before me personally appeared Kenneth Augustin, with whom I am personally acquainted and who, upon oath, acknowledged himself to be the President of Bank of Lawrenceburg, Bank of Loretto and Bank of Leoma, a corporation, and that he, as such President, being authorized so to do, acknowledged that he executed the foregoing Release for the purposes therein contained, by signing the name of the Corporation by himself as President.

Witness my hand and official seal at Lawrenceburg, Tennessee, this 31st day of July, 1985.

/s/ Barbara Jo Crawford
Notary Public

Plaintiff asserts that the release is not binding upon plaintiff because of Santini's failure to comply with 12 U.S.C. § 1823(e), which reads in pertinent part as follows:

12 U.S.C. § 1823(e) *Agreements Against Interest of Corporation.*

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of an asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

T.C.A. § 47-3-201 states:

(1) The transfer of an instrument vests in the transferee such rights as a transferor has therein, except that a transferee who has itself been a party to any fraud or illegality effecting the instrument or who as a prior holder had notice of a defense or a claim against it cannot improve his position by taking from a later holder in due course.

A representative of FDIC testified without contradiction that upon a search of the files of the Bank of Loretto, no record was found of any action by the Loan Committee or the Directors of the Bank of Loretto authorizing or approving the above release agreement.

The former president of the Bank of Loretto testified as follows:

Q. Have you ever seen the Minutes of either the loan finance committee or the finance committee or the Board of Directors, physically yourself seen the Minutes approving the release?

A. Yes, they were there.

. . . .

Q. Mr. Augustin, I'm asking you, and I remind you that you are under oath, have you ever personally seen the Minutes of either the finance committee or the Board of Directors approving the release?

A. Yes, I saw the Minutes. They were there. I was there when they were taken.

Q. Were those Minutes placed in the bank?

A. In the vault.

Q. Did the F.D.I.C. acquire all the Minutes of the loan committee and Board of Directors?

A. Yes.

Q. So, if any Minutes existed, the F.D.I.C. should have them; is that correct?

A. I would think so, yes.

This Court considers the absence of any record of any action of the governing officials of the bank to be of greater weight than the mere recollection of the former president of a defunct bank who undertook to release a $65,000 debt to the bank for $14,000 because the bank "needed the money".

It is also to be noted that the release is not executed by the obligors, Santini and Shady Brook Angus, as required by 12 U.S.C. § 1823(e) supra.

Defendants cite *FDIC v. Nemecek*, D.Kas.1986, 641 F.Supp. 740; a trial court decision, wherein it was held that an accord and satisfaction completed before the acquisition of a note by FDIC extinguished the note so that FDIC never acquired the note and 12 U.S.C. § 1823(e) was inapplicable.

The former president of the Bank of Loretto, testified as follows:

Q. There was approximately sixty-five thousand dollars of debt owing by Mr. Santini under the Shady Brook Angus name. There was a release executed in consideration of twelve thousand dollars; is that correct?

A. There were in Shady Brook Farms, approximately, yes, and we did release Mr. Santini for twelve thousand dollars.

Q. Why did you release Mr. Santini for that low amount?

A. After reviewing our files, there was no partnership agreement. We only had Mr. Santini's name on one note. And, you know, the F.D.I.C. was asking us to raise capital and that's the best offer we had. We had to mark the notes off, so we accepted his payment.

. . . .

Q. So, the real reason you accepted the twelve thousand dollars on a sixty-five-thousand-dollar indebtedness was because the bank needed to raise capital; is that correct?

A. Well, yes.

Q. Is it prudent banking practice to accept twelve thousand dollars in payment of sixty-five thousand dollars worth of indebtedness?

A. When you didn't have any other collateral, yes.

Q. Do you recall seeing the personal financial statement of Mr. Santini?

A. No, I did not make the loan.

Q. So, you don't know what assets he had, do you?

A. No, it wasn't in his file at the time.

■ When the FDIC purchases a note in its corporate capacity without notice of any infirmity, it takes the note free of any defense. *FDIC v. Wood,* 6th Cir.1985, 758 F.2d 156.

■ The provisions of 12 U.S.C. § 1823(e) are inapplicable to a note held by FDIC in its capacity as receiver. *Jones v. Federal Deposit Insurance Corporation,* 1979, 151 Ga.App. 619, 260 S.E.2d 751.

There is no evidence that the note was held or transferred to plaintiff by FDIC in the capacity of receiver. The assignment on the face of the note, quoted above, indicates that the note was held and transferred by FDIC in its corporate capacity.

In *Langley v. FDIC,* 1987, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 the Langleys were sued by a bank on a note, which was subsequently acquired by FDIC which was substituted for the bank in the suit. The defense was fraudulent inducement. The Supreme Court affirmed judgment for FDIC and said:

> (3) One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities, see 12 USC §§ 1817(a)(2), 1820(b) [12 USCS §§ 1817(a)(2), 1820(b)], and when the FDIC is deciding whether to liquidate a failed bank, see § 1821(d), or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank, see § 1823(c)(2), (4)(A). The last kind of evaluation, in particular, must be made "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Gunter v. Hutcheson,* [11th Cir. 1982] 674 F2d [862], at 865. Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

> A second purpose of § 1823(e) is implicit in its requirement that the "agreement" not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record "contemporaneously" with the making of the note and have been approved by officially recorded action of the bank's board or loan committee. These latter requirements ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure. Neither purpose can be adequately fulfilled if an element of a loan agreement so fundamental as a condition upon the obligation to repay is excluded from the meaning of "agreement".

> . . . .

> The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew. It would be rewriting the statute to hold otherwise. Such a categorical recording scheme is of course not unusual. Under Article 9 of the UCC, for example, a filing secured creditor prevails even over those unrecorded security interests of which he was aware. See, e.g., *Rockwell Int'l Credit Corp. v. Valley Bank,* 109 Idaho 406, 408–409, 707 P2d 517, 519–520 (Ct.App. 1985); *Bloom v. Hilty,* 427 Pa 463, 471, 234 A2d 860, 863–864 (1967); 9 R. Anderson, Uniform Commercial Code § 9–312:7, p 298 (3d ed 1985); J. White & R. Summers, Uniform Commercial Code § 25–4, p 1037 (2d ed 1980).

In the present case, the bank undertook to settle $65,000 of indebtedness of Santini, including the present note, for $12,000. Since the bank retained its rights against the other maker, Johnston, it did not deliver up the note to Santini and retained it in the files of the bank without any notation thereon that one of the makers had been released. These circumstances bring the

present case squarely within the purposes of 12 U.S.C. § 1823(e) as expounded is *Langley,* supra.

The lack of the signature of debtors on the release and the lack of record of proper action by the required officials of the bank render the release ineffective against the claim of the assignee of FDIC.

This Court therefore respectfully disagrees with the dismissal of plaintiff's suit against Santini and Shady Brook Angus, and will render judgment accordingly.

### *The Countersuit*

The counter defendant moved to dismiss the counterclaim on the ground that it failed to state a claim for which relief can be granted. The counter claim in its entirety reads as follows:

Now having fully answered the Complaint, defendants, Antonio Santini and Shady Brook Angus, assume the role of Counter Plaintiffs and for a cause of action would state and show unto this Honorable Court as follows:

### I

That on the 9th day of April, 1987, Counter Defendant filed suit against the Counter Plaintiffs, in this Honorable Court alleging liability on a certain note dated the 31 day of October, 1983.

### II.

Had the Counter Defendant conducted any investigation whatsoever of the status of said note as concerns Counter Plaintiffs prior to the filing of same, Counter Defendant would have discovered that the Counter Plaintiffs had been released from said note as evidenced by Exhibit 1 hereto together with Exhibits thereto. That alternatively, the Counter Defendant was aware of said Release but filed this cause of action in spite thereof. Said action of the Counter Defendant was done willfully, maliciously and without just cause. That this action resulted in the Counter Plaintiffs incurring attorney fees when the original plaintiffs knew or in the exercise of reasonable care should have known that there was no basis whatsoever for said original suit.

### III.

That the Counter Defendant's actions were done without any probable cause whatsoever for the purpose of harassing and intimidating the Counter Plaintiffs and has resulted in their humuliation (sic), embarrassment, and damage to their reputation. That the actions of the Counter Defendants were without any justification whatsoever.

WHEREFORE, the Counter Plaintiffs, Antonio Santini and Shady Brook Angus, demand judgment against the Counter Defendant in the sum of Five Hundred Thousand ($500,000.00) Dollars compensatory damages and One Million ($1,000,-000.00) Dollars punitive damages.

An "Amended Counter Complaint" reads as follows:

Comes the defendant, Counter–Plaintiff, Antonio Santini, d/b/a Shady Brook Angus, and amends his Complaint by adding Paragraph IV to the original Counter–Complaint, as follows:

On or about May 8, 1987, the plaintiff, counter defendant received a copy of the defendant, Antonio Santini, d/b/a Shady Brook Angus' Answer to the plaintiff's Complaint and also received a copy of an attachment thereto noted Exhibit 1, which is a release executed on July 31, 1985, by and between the Bank of Loretto, Bank of Leoma and Bank of Lawrenceburg, Parties of the First Part, and Antonio Santini and wife, Lucille Santini, and Shady Brook Farms, Parties of the Second Part. Although the defendant counter plaintiff, Antonio Santini, d/b/a Shady Brook Angus performed all conditions precedent to his entering into said release, the plaintiff, counter-defendant has failed and refused to dismiss its lawsuit against the defendant and counterplaintiff, Antonio Santini, d/b/a Shady Brook Angus, although it is clear from said release that the plaintiff, counter-defendant has no legal cause of action against the defendant, counter-plaintiff,

Antonio Santini, d/b/a Shady Brook Angus, in light of said release. The failure of the plaintiff, counter-defendant to dismiss its lawsuit is and has been without justification, and as a result, the defendant, counter-plaintiff, Antonio Santini, d/b/a Shady Brook Angus, has incurred great legal and other expense as a result of the plaintiff and counter-defendant's bad faith to such an extent that the defendant, counter-plaintiff, Antonio Santini, d/b/a Shady Brook Angus, is entitled to recover both compensatory and punitive damages of the plaintiff, counter-defendant, Deposit Recovery Corporation.

It is obvious that the gravamen of the counterclaim is the alleged institution and prosecution of a groundless civil suit, which is commonly denominated "malicious prosecution". Appellees concede that no cause of malicious prosecution is stated because, at the time of the filing of the counterclaim and amendment thereto, there had been no termination of the prosecution favorable to appellees. *Tennessee Publishing Company v. Fitzhugh*, 1932, 165 Tenn. 1, 52 S.W.2d 157; *Rosen v. Levy*, 1908, 120 Tenn. 642, 113 S.W. 1042.

Appellees insist that their counterclaim states a claim for abuse of process.

▮ An abuse of process or malicious abuse of process is its malicious use to obtain a result which the process was not intended by law to effect. Malicious use of process is the employment of process for its legitimate purpose, but maliciously and without probable cause. 72 C.J.S. § 106, p. 694. Neither cause of action is stated in the counterclaim or the amended counterclaim. In *Peerman v. Sidicane*, Tenn.App. 1980, 605 S.W.2d 242, cited by appellees, a physician sued a patient and her attorney who had sued the physician for malpractice. The malpractice suit against the physician was dismissed on May 7, 1976. The physician's suit against the plaintiff and her attorney for malicious prosecution or abuse of process was filed nearly one year later on May 4, 1977.

This Court affirmed a judgment which dismissed the suit against the client and awarded damages against the attorney who had filed suit without authorization of his client and without any information to substantiate the suit except speculation. Citing authorities, this Court said:

"A malicious prosecution action is one to recover damages caused by a judicial proceeding instituted with malice and without probable cause. Such damages are allowable under such an action as proximately result to the plaintiff, his person, property, or reputation from a previous unsuccessful civil or criminal proceeding which was prosecuted without probable cause and with malice."

Thus, as it contended by counsel for the plaintiff-appellee, the essential and controlling issue in the case at bar is whether an action may be maintained against an attorney for the torts of malicious prosecution and abuse of process where the attorney's improper actions consist of the institution and prosecution on behalf of a client of a groundless, spurious and false claim.

We believe that under the peculiar facts of this case and the succession of actions of the defendant who continued to press the case without the consent of his client and without her knowledge, and considering certain allegations in the complaint that were not predicated on any information his client gave him but which were entered in the complaint from pure speculation on his part, and where he prosecuted a groundless appeal without the consent of his client, the action against the attorney will lie.

The allegations of the counterclaim do not bring this case within the limited conditions set out in *Peerman v. Sidicane*. Moreover, the *Peerman* suit was not asserted as a counterclaim before termination of the first suit as occurred in the present case.

In *Donaldson v. Donaldson*, Tenn.1977, 557 S.W.2d 60, the Supreme Court discussed the nature of abuse of process and malicious prosecution and held that neither claim was properly asserted in the complaint.

Appellees assert that abuse of process is to be found in the numerous motions filed by plaintiff and the 42 subpoenas for depositions. No reference to these motions or subpoenas is found in the counterclaim or amended counterclaim which do not state a claim for which relief can be granted for malicious prosecution or abuse of process.

Appellees insist that their counterclaim states a claim for outrageous conduct, which is defined as conduct so outrageous in character and extreme in degree as to be beyond the pale of decency, and to be atrocious and utterly intolerable in a civilized society. *Swallows v. Western Electric Co., Inc.,* Tenn.1976, 543 S.W.2d 581.

Nothing is found in the countercomplaint or amended complaint to support a claim for outrageous conduct.

Even if it should be held that the counterclaim and/or amended counterclaim stated a claim for which relief could be granted, this Court holds that the evidence preponderates against any finding of liability under the counterclaim or amended counterclaim. T.R.A.P.Rule 13(d).

This Court does not favor the practice of "fighting fire with fire" by heaping lawsuit upon lawsuit based upon alleged misconduct in the pending suit. Any countersuit for malicious prosecution must await the final disposition of the pending suit. Any other misconduct in the pursuit of the pending suit should be addressed to and restrained by the presiding judge in the pending suit, and any unsatisfied claims arising from such conduct should generally be pursued in a separate suit.

The judgment in favor of counter plaintiffs and against plaintiff is reversed, and the counterclaim is dismissed. The judgment dismissing Antonio Santini and Shady Brook Angus is reversed, and judgment is rendered in favor of plaintiff and against Antonio Santini and Shady Brook Angus for $13,974.00 with interest from April 4, 1988, the date of entry of judgment against Johnston.

All costs, including costs of this appeal are taxed against Antonio Santini and Shady Brook Angus. The cause is remanded for entry of judgment in conformity herewith and for such further proceedings as may be necessary and proper.

REVERSED, RENDERED AND REMANDED.

CANTRELL, J., and ADOLPHO A. BIRCH, Jr., Special Judge, concur.